# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**
NOV 20 2000
CHARLES R. FULBRUGE III
CLERK

No. 99-51025
Summary Calendar

D.C. Docket No. SA-97-CV-534-OG

FILED
JAN 17 2001
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

EVANGELINA ULANOFF

    Plaintiff - Appellant

v.

WILLIAM J HENDERSON, Post Master General, United States Postal Service

    Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, San Antonio.

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: JAN 12 2001

A true copy
Test:
Clerk, U.S. Court of Appeals, Fifth Circuit
By _____ Deputy
New Orleans, Louisiana   JAN 12 2001

/141/

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED
NOV 20 2000
CHARLES R. FULBRUGE III
CLERK

No. 99-51025
(Summary Calendar)

EVANGELINA ULANOFF

Plaintiff-Appellant

versus

WILLIAM J. HENDERSON, Post Master General, United States Postal Service

Defendant-Appellee

- - - - - - - - - -

Appeal from the United States District Court
for the Western District of Texas
(97-CV-534-OG)

- - - - - - - - - -

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Evangelina Ulanoff appeals the district court's grant of summary judgment in favor of Defendant-Appellee William J. Henderson in his capacity as Post Master General of the United States Postal Service ("Post Office"), dismissing her claims of sexual harassment and retaliation for engaging in protected EEO activity. Ulanoff contends that she was sexually harassed by her supervisor and that because she reported this, she was demoted from

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

acting supervisor to mail carrier. We affirm the decisions of the district court, concluding that the record supports the grant of summary judgment.

## I. *Facts and Proceedings*

Evangelina Ulanoff, an Hispanic, began her career with the Post Office as a PS-5 letter carrier in 1981. In 1987, she was promoted to the position of acting supervisor via the agency's 204-B program. She remained in that position for approximately six years, most of which was spent at stations in San Antonio, Texas, where Thomas Bertetti was the station manager.

Ulanoff alleges that Bertetti repeatedly subjected her to sexual harassment, both verbally and physically, during this time. Ulanoff states that Bertetti regularly called her into his office for closed-door meetings during which he asked her offensive questions about her personal life and her marriage, and that on one occasion he touched her breast. Ulanoff also alleges that Bertetti threatened to tell her husband that he (Bertetti) had had sexual relations with her, which she insists never occurred. Ulanoff reported Bertetti's behavior to her immediate supervisor but, as Bertetti was his supervisor as well, her supervisor stated that he could do nothing to help her.

Ulanoff was eventually removed from Bertetti's supervision, but after an absence of a year and a half, she was returned to his supervision. Ulanoff claims that Bertetti informed her that he had

"made a deal" with area manger Pedro Casias to have her returned to his (Bertetti's) supervision.

Ulanoff stated that she approached Casias on a number of occasions, asking that she be removed from Bertetti's supervision because of the persistent pattern of sexual harassment. Casias appears finally to have agreed to this but informed Ulanoff that she must explain the reasons for the transfer to Bertetti, which she never did. Ulanoff claims that when Casias learned that she had not thus informed Bertetti, he (Casias) was "highly upset." In fact, according to Ulanoff, Casias had been so angry that, before she quit, he reassigned her to the post of mail carrier. Regardless of the reasons, however, none dispute that, after she was transferred from Bertetti's supervision, Ulanoff continued to work as an acting supervisor for about a year and a half. She served in that capacity at two different stations until she was removed from that position and re-assigned as a mail carrier.

On June 9, 1993, eleven months after her last contact with Bertetti and twenty two days after her removal from the position of acting supervisor, Ulanoff requested an appointment with an Equal Employment Opportunity ("EEO") counselor. Fourteen days later, she filed a written request for counseling. Ulanoff's only previous contact with an EEO counselor had been in a February 1993 telephone conversation with Alice Orta, who denies that Ulanoff sought counseling during that call. Ulanoff, in contrast, alleges that

3

Orta urged her not to file a complaint, as doing so would constitute "career suicide."

Ulanoff filed a formal complaint of discrimination with the Post Office a few months later. The Post Office accepted only the complaint about her removal from the acting supervisor position, rejecting Ulanoff's other complaints because she had failed to cooperate when asked for specific dates and names regarding her sexual harassment claim and for more specific information regarding her other claims. Subsequently, however, the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC") reinstated these claims, finding the rejection improper in light of the Post Office's failure to warn Ulanoff that her complaint would be dismissed if she did not cooperate.

Ulanoff filed two complaints of employment discrimination with the EEOC against the Post Office. In the first she alleged (1) discrimination on the basis of sex and national origin, and (2) retaliation on the basis of her prior EEO activity ( collectively the "sexual harassment complaint"). In Ulanoff's other EEOC complaint, she alleged that the decision not to promote her to the position of supervisor was based on (1) sex and national origin discrimination and (2) retaliation for her prior EEO activity (the "non-promotion complaint"). The EEOC administrative law judge ("ALJ") recommended deciding in favor of Ulanoff, finding actionable sexual harassment in the sexual harassment complaint, sex discrimination in the non-promotion complaint, and retaliation

4

for protected EEO activity in both complaints. The Post Office chose not to adopt any of these recommendations, however, finding the sexual harassment complaint to have been untimely filed and declining to consider the merits of Ulanoff's other complaints.

Ulanoff then filed this lawsuit in district court, alleging that she was (1) sexually harassed by her supervisor, Thomas Bertetti, (2) removed from the Postal Service's 204-B program in retaliation for complaining to the EEOC about that harassment, and (3) denied promotion to supervisor in retaliation for her EEO activity and because of her sex. The Post Office filed motions for summary judgment on all three charges and the district court granted these motions. Ulanoff then filed a motion for reconsideration of the court's summary judgment on her first and third claims.

After further briefing, the district court affirmed its dismissal of the sexual harassment claim as untimely and the sex discrimination claim for non-promotion as unmeritorious. The court did reinstate the claim for retaliatory non-promotion, however, which claim proceeded to trial. At the conclusion of the trial, the jury returned a verdict for the Post Office.

Ulanoff filed this appeal, limited to the issues of the district court's dismissal of the sexual harassment complaint as untimely and the retaliatory removal claim on its lack of merit. She did not appeal either the district court's grant of summary judgment on the non-promotion claim grounded in sex discrimination

5

or the jury's verdict on the non-promotion claim grounded in retaliation.

## II. *Analysis*

A. Standard of Review

We review a district court's grant of summary judgment de novo.[1] In so doing, we "review the record independently, make any factual inferences in favor of the nonmovant, and then ask whether the movant is entitled to judgment as a matter of law."[2]

B. Timeliness of the Sexual Harassment Claim

Ulanoff contends that the district court erred in rejecting her sexual harassment claim against the Post Office as untimely. The court ruled that she had not complied with the requirement of 29 C.F.R. § 1614.105(a)(1) which directs that she "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." During both the processing of her administrative complaint and discovery for her civil suit, Ulanoff stated that she was sexually harassed by Thomas Bertetti, who had been her supervisor from August 1987 until March 1991 and again from July 1992 until September 1992. Ulanoff first contacted EEO counselor Alice Orta in February 1993, at which time Ulanoff apparently neither made a formal complaint nor requested

---

[1] See Degan v. Ford Motor Company, 869 F.2d 889, 892 (5th Cir. 1989).

[2] Id.

6

counseling. Ulanoff did not formally request counseling until June 23, 1993. Facially then, Ulanoff did not report her claim timely.

1. Estoppel

There are, however, a number of exceptions to the 45 day limit, namely equitable estoppel, equitable tolling, and waiver.[3] Ulanoff contends that the Post Office is estopped from raising the issue of timeliness as it did so only after the ALJ issued his report recommending a finding of discrimination. Her reliance on Abernathy v. Brown,[4] an EEOC decision in which the Commission held that an agency is estopped from raising a claim of untimeliness unless it does so in the EEOC hearing, is misplaced. First, the relevant language in Abernathy is dicta; furthermore, we are not bound by the decisions of the EEOC. When presented with Ulanoff's claims, the Post Office investigated. The EEOC hearing is part of this investigative process, in which the ALJ recommends a decision that the agency is free to accept, reject, or modify as it sees fit. Estoppel is typically granted in situations bordering on misrepresentation, as when the defendant's conduct induces the plaintiff to refrain from exercising her rights.[5] Ulanoff's sexual harassment complaint was initially presented as a continuing violation that occurred from 1987 until May 18, 1993. That being

---

[3] See 29 C.F.R. § 1614.604(c).

[4] EEOC Appeal No. 01962216, 1997 WL 90886 (Feb. 26, 1997).

[5] See Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 878 (5th Cir. 1991), rev'd on other grounds, 39 F.3d 537 (5th Cir. 1994).

so, it is obvious why the Post Office did not raise the issue of timeliness at that juncture.

Ulanoff claims that the Post Office's failure to assert the limitations defense induced her not to file her complaint within the statutory period, which should estop the Post Office from maintaining its defense of time bar. The evidence demonstrates, however, that the 45 day window had closed long before Ulanoff ever filed her complaint. That being the case, Ulanoff cannot reasonably claim that the Post Office's failure to raise the issue of timeliness somehow prevented her from contacting an EEO counselor within the specified time period.

Ulanoff presents three additional arguments in an effort to support her equitable estoppel claim. First, she argues that a widespread fear and mistrust of the EEO process pervaded the San Antonio post office stations, making employees inclined to turn to the EEO only as a last resort. The record contradicts this contention; instead, it shows that San Antonio postal employees regularly availed themselves of the EEO process. Second, Ulanoff contends that when she contacted EEO counselor Alice Orta, Orta discouraged her from filing a complaint or otherwise pursuing action against the Post Office, telling her, as noted, that doing so would be "career suicide." Whether or not this occurred is irrelevant, however, as Ulanoff's first conversation with Orta took place well after the expiration of the 45 day period, rendering this argument moot. Third, Ulanoff contends that when she informed

8

her supervisors of the harassment she had suffered while under Bertetti's supervision, each supervisor told her either that he could not or would not help her. Ulanoff does not contend, though, that her supervisors in any way withheld information about the EEOC process, misled her, or dissuaded her from pursuing other remedies. As each of her arguments is unavailing, Ulanoff's invoking of the doctrine of equitable estoppel is unavailing.

2. Equitable Tolling

Ulanoff next advances equitable tolling as an exception to time bar. "Equitable tolling focuses on the employee's ignorance, not on any possible misconduct by the employer."[6] But, as Ulanoff has not contended that she was unaware of her rights or of the EEO process generally, this exception is inapplicable.

3. Waiver

Regarding waiver, we note that the Post Office had not made a finding of discrimination when it raised the defense of time bar. Therefore, Ulanoff cannot maintain the position that a federal agency "by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time delays."[7] On the contrary, "to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."[8] As the Post

---

[6] Id.

[7] Oaxaca v. Roscoe, 641 F.2d 386, 389 (5th Cir. 1981).

[8] Rowe v. Sullivan, 967 F.2d 186, 190 (5th Cir. 1992).

Office made no such finding here, it did not waive its right to assert a timeliness objection when it failed to advance it at the EEOC hearing.

4. Continuing Violation

Ulanoff nevertheless continues to assert that the sexual harassment she suffered was a continuing violation perpetrated by the Post Office, so that in fact her complaint was filed within the 45 day window. To invoke the continuing violation doctrine, a plaintiff must point to a series of related acts of discrimination, at least one of which falls within the 45 day limitation period.[9] A plaintiff may not use this doctrine to resurrect past discrimination, even if the effects of that discrimination linger.[10] "This theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases."[11] Moreover, the continuing violation theory does not alleviate a plaintiff's obligation to demonstrate that the harassment was both perpetrated on her and negatively affected her.

After carefully reviewing the record in light of Ulanoff's arguments, we discern no support for her contention that the harassment was a continuing violation. The record gives no

---

[9] See Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 979 (5th Cir. 1983).

[10] See id.

[11] Abrams v. Baylor College of Medicine, 805 F.2d 528, 533 (5th Cir. 1986).

10

indication that Ulanoff was harassed by anyone other than Bertetti, and he retired in October 1992. Thus, she cannot and has not shown that she suffered any harassment within the relevant 45 day window for filing her complaint. The Post Office's affirmative defense of time bar is valid.

C. The Retaliatory Removal Claim

Ulanoff alleged that she was removed from her 204-B job of acting supervisor in retaliation for having engaged in protected EEO activity. To establish a claim of reprisal discrimination, Ulanoff must show that (1) she engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between these two events.[12] Ulanoff has shown that she engaged in protected activity by reporting her claims to an EEO counselor and filing a complaint with the EEOC. She has also shown that she suffered an adverse employment action, when she was removed from a 204-B position as acting supervisor and returned to her former status of mail carrier. Like the district court, however, we conclude that Ulanoff has failed to establish the required causal link between her protected activity and the adverse employment action that she suffered.

For Ulanoff to show a causal connection, she must demonstrate, at a minimum, that those responsible for her removal from the 204-B position were aware that she had filed a complaint against the

---

[12] See Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).

11

agency based on her supervisor's alleged misconduct. The record, however, does not support this contention, containing no evidence that those responsible for the relevant employment decision had any knowledge of her harassment complaint. Neither is there any evidence implying that those who made the decision to demote Ulanoff did so in retaliation for her protected activity. In fact, the record actually shows that those who Ulanoff claims acted in retaliation (such as Casias) had no input in the decision to return her to her former position as a mail carrier.

### III. *Conclusion*

After carefully reviewing the briefs of the parties and relevant portions of the record, we conclude that the district court did not err in granting summary judgment for the Post Office, dismissing Ulanoff's claims of sexual harassment and retaliatory removal. Her sexual harassment claim is barred as untimely filed, and she failed to produce probative evidence of a causal connection between her protected EEO activity and her removal from the position of acting supervisor. The judgment of the district court is, in all respects,

AFFIRMED.